# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CIVIL ACTION |
| | : |
| LESLIE C. ATKINS | : |
| | : NO. 17-5048 |

**KEARNEY, J.**                                                                                              **April 20, 2018**

## MEMORANDUM

Parties agreeing to modify a real estate purchase agreement through terms agreed in open court before, and then confirmed by, a United States Bankruptcy Judge, should be able to rely upon those modified terms. Absent incompetency or other extraordinary contract defense, we will enforce the oral modifications based on clear and convincing evidence of agreement confirmed in open court by all parties before a federal judge. We today review a putative property buyer's remorse when its Chief Executive Officer did not object to an oral modification modifying his company's purchase agreement in bankruptcy court. A curious wrinkle is presented when the putative buyer's Chief Executive Officer does not object to the oral modifications before a bankruptcy judge while his company's lawyer is apparently simultaneously before a state court obtaining a less favorable postponement of a sheriff's sale. Regardless of the buyer's lawyer's efforts in state court, the putative buyer's CEO agreed to terms recited by the bankruptcy judge and then separately analyzed by a second bankruptcy judge approving the property sale to another buyer. Given our appellate standard of review, we affirm the United States Bankruptcy Court's November 7, 2017 Order finding the parties orally modified the original purchase agreement before the bankruptcy court, the putative buyer failed to satisfy the modified terms, and the debtor could sell her real property to the second buyer.

## I. Facts from the bankruptcy record.

Leslie Atkins petitioned for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code.[1] The City of Philadelphia held secured claims totaling over $40,000 against real properties owned by Ms. Atkins.[2] On April 7, 2016, after a confirmation hearing and considering the Chapter 13 trustee's approval of Ms. Atkins's Chapter 13 Plan, the Honorable Jean K. FitzSimon entered an Order confirming Ms. Atkins's Plan.[3] Under the confirmed Plan, Ms. Atkins agreed to pay $905.14 for fifty-two months totaling $52,300.[4] Ms. Atkins is responsible for funding the Plan.[5] To satisfy the City's secured claims, Ms. Atkins agreed to surrender her interest in a vacant lot she owned in Philadelphia ("Property").[6]

### *Ms. Atkins agreed to sell the Property to Forward, LLC.*

On May 6, 2017, Ms. Atkins agreed to sell the Property to Forward, LLC governed by a written purchase agreement ("Purchase Agreement").[7] Forward agreed to pay $1,000 for the Property and to satisfy certain debts and liens against the Property.[8] At the time of signing the Purchase Agreement, Ms. Atkins's known debts on the Property totaled just over $110,000.[9] The debts included $10,772 in real estate taxes, $29,450 in City license and inspection debts, and City water liens estimated at $71,505.[10] The parties conditioned the Purchase Agreement on bankruptcy court approval.[11] Paragraph 3(g) of the Purchase Agreement set the closing date for the purchase on or before the forty-fifth day following the bankruptcy court's approval or at an earlier date if agreed by the parties.[12] The Purchase Agreement provided, "Neither Party shall be in default hereunder unless the other has given written notice thereof and such default remains uncured beyond five (5) days after the date of such notice."[13] The Purchase Agreement required this notice be sent by personal or overnight delivery.[14]

2

***The parties modify the Purchase Agreement and seek approval by the bankruptcy court.***

On June 7, 2017, Ms. Atkins moved to sell the Property free and clear of liens to Forward.[15] Ms. Atkins twice amended her motions to sell the Property to Forward.[16] Ms. Atkins and Forward required the City's consent to the free and clear sale because the City held liens against the Property. The City objected to Ms. Atkins's amended motion arguing the proposed sale to Forward would not be a free and clear sale under 11 U.S.C. § 363(f).[17] The City argued it would be meaningless to sell the Property to Forward for $1,000 if City liens remained unpaid at closing because the Sheriff, with the City's liens, would sell the Property at the upcoming September 20, 2017 Sheriff's sale.[18]

On September 19, 2017, Judge FitzSimon held a hearing on Ms. Atkins's amended motion to sell the Property to Forward free and clear of liens.[19] Forward's CEO Max Glass, Ms. Atkins, the City, and the Chapter 13 trustee attended the hearing.[20] Mr. Glass attended the hearing without a lawyer.

At the hearing, the City explained the parties reached an agreement addressing its objections subject to the Court's approval.[21] The City defined the parties' agreement: (1) the sale would not be free and clear of the City's statutory water liens to the extent unpaid at closing; (2) the real estate taxes and license and inspection debts would be paid at closing; (3) City would be paid $1,000 towards the water debts; (4) the City would postpone the September 20, 2017 Sheriff's sale of the Property until October 18, 2017; and, (5) if closing takes place between September 20 and October 17, 2017, the City would postpone the Sheriff's sale for another five months to give Forward time to negotiate a settlement with the City or seek administrative relief reducing the water liens.[22] Judge FitzSimon asked Ms. Atkins's counsel if the City's recitation of terms reflected the terms agreed by the parties. Ms. Atkins's counsel confirmed the City's

3

statement of terms. Forward's CEO Mr. Glass did not object to the City's and Ms. Atkins's representations. Judge Fitzsimon confirmed the agreement: "All right. Everybody in agreement then as to what we heard. All right. Then we got that on the record and we look forward to getting an order to come."[23]

Simple enough. But while Forward's CEO Glass agreed to new terms before Judge Fitzsimon, a lawyer for Forward obtained a stay of Sheriff's sale scheduled for the next day from the Court of Common Pleas until December 20, 2017.[24] At a later hearing in bankruptcy court, Ms. Atkins and Forward disputed whether Ms. Atkins authorized Forward's counsel to appear on her behalf in the court of common pleas and whether Forward's counsel actually acted on her behalf or filed the petition to stay on behalf of Forward with Ms. Atkins's consent.[25]

On October 11, 2017, Chief Judge Eric L. Frank entered an Order granting Ms. Atkins's amended motion to sell the Property under the terms reached before Judge Fitzsimon.[26] Under Paragraph (e) of his Order, Chief Judge Frank directed Forward "shall pay" "at closing": real estate taxes, license and inspection debts against the Property, and $1,000 towards the water liens.[27] Chief Judge Frank explained the sale to Forward is not free and clear of the City's water liens.[28] Chief Judge Frank explained the City agreed to postpone the September 20 Sheriff's sale to October 18, 2017.[29] At paragraph (g) of his October 11 Order, Chief Judge Frank stated if the City received Forward's payments due at closing under Paragraph (e) on or before October 17, 2017, the City would further postpone the Sheriff's sale to March 2018.[30]

### *Ms. Atkins received a more favorable offer for the Property.*

Between Chief Judge Frank's October 11 Order and October 17, CT Property Investors, LLC, approached Ms. Atkins with a $110,000 offer for the Property.[31] On October 17, 2017, the City notified Forward of its failure to pay the outstanding liens.[32] At 8:52 p.m. on October 17,

4

Ms. Atkins's counsel emailed Forward's counsel and CEO Mr. Glass notifying them Forward failed to close by October 17 under the Purchase Agreement and Ms. Atkins would move the bankruptcy court to determine whether Ms. Atkins could sell to another buyer.[33] On October 18, 2017, Ms. Atkins moved for expedited reconsideration of the October 11 Order claiming Forward breached the Purchase Agreement, as modified by all parties before Judge Fitzsimon at the September 19 hearing and confirmed in Chief Judge Frank's October 11 Order by failing to close on or before October 17, 2017.[34] Chief Judge Frank scheduled a hearing on Ms. Atkins's motion for October 30, 2017.[35]

### *Chief Judge Frank finds Forward breached the modified Purchase Agreement allowing Ms. Atkins to sell the Property to CT.*

Chief Judge Frank needed to decide the narrow issue of "what is the contractual deadline . . . for Forward to close on the agreement of sale that was approved by the Bankruptcy Court by the order entered on October 11."[36] Forward argued the October 11 Order did not modify the closing date set in the Purchase Agreement - forty-five days from bankruptcy court approval of the Purchase Agreement.[37] Ms. Atkins and the City argued the parties modified the Purchase Agreement as allowed under Paragraph 3(g) at the September 19 hearing and the October 11 Order requiring Forward make certain payments by October 17, 2017.[38] Chief Judge Frank reviewed the audio recording of the September 19 bankruptcy court hearing before Judge Fitzsimon and evaluated the credibility of two City witnesses confirming no person paid the liens of the Property as of October 27, 2017.

After Ms. Atkins and the City closed their case in chief, Forward moved for nonsuit arguing Ms. Atkins and the City did not adduce evidence sufficient to show a modification of the Purchase Agreement.[39] Chief Judge Frank denied Forward's motion citing the City's summary of the agreement at the September 19 hearing postponing the September 20 Sheriff's sale one

5

month to October 18 and the City stating "if closing happens within that one month, then we'll agree to postpone the sheriff sale another five months."[40] Forward argued the City's statement related only to the Sheriff's sale process and did not modify the Purchase Agreement.[41] Chief Judge Frank rejected Forward's argument explaining he could interpret the statement applying to the Purchase Agreement by "necessary implication."[42] Chief Judge Frank found there would be no Purchase Agreement to enforce if the parties did not close before October 18 and the Property sold to another buyer at Sheriff's sale on October 18, allowing him to infer the parties modified the closing date to October 17.[43]

After hearing testimony from a Forward manager, who did not participate at the September 19 hearing, and closing arguments, Chief Judge Frank issued an oral bench memorandum granted Ms. Atkins's motion for reconsideration.[44] Chief Judge Frank found the parties formed a three-way agreement at the September 19 hearing to close before the Sheriff's sale postponed until October 18.[45] Chief Judge Frank concluded, "based on the context, I find that it was such a modification of Paragraph 3(g) [of the Purchase Agreement]. I am persuaded that that interpretation of the agreement makes the most sense, primarily because it makes little sense for Forward to have additional time that is until the end of November to close the transaction [i]f the property was being sold on October 18th."[46]

Chief Judge Frank made three additional findings. First, he found the state court stay of the Sheriff's sale until December 20 irrelevant because "the key issue is what agreement was made in the Bankruptcy Court" with all three parties present.[47] Chief Judge Frank found the common pleas Order postponing the Sheriff's sale did not undermine the agreement made between the parties before Judge Fitzsimon on September 19, particularly given the agreement entered in bankruptcy court afforded Forward a longer postponement of the Sheriff's sale than it

6

obtained from the court of common pleas.[48]  Second, although the Purchase Agreement required modification in writing, Chief Judge Frank explained a "contract that has a provision that says it can only be modified in writing can nonetheless still be modified by conduct."[49]  Chief Judge Frank viewed representations made at the September 19 hearing sufficient to show the parties intended to agree to the October 17 closing date.[50]  Third, Chief Judge Frank found Ms. Atkins satisfied paragraph 10 of the Purchase Agreement, which required parties provide notice of default and a five-day cure period for the defaulting party.[51]  Chief Judge Frank found Ms. Atkins notified Forward on October 17 of its default and Forward failed to cure the breach by October 22.[52]

On November 7, 2017, Chief Judge Frank entered an Order granting Ms. Atkins's motion for expedited reconsideration of the September 19 Order finding Forward materially breached the Purchase Agreement and approved the sale of the Property to CT.[53]  On November 13, 2017, Forward filed a corrected notice of appeal challenging the November 7 Order.[54]

## II.  Analysis

Forward asks we reverse Chief Judge Frank's November 7, 2017 Order arguing he erred by denying its motion for nonsuit at the October 30 hearing and finding the parties modified the Purchase Agreement.  Forward also argues Chief Judge Frank erred by finding Ms. Atkins satisfied the notice of default provision in the Purchase Agreement.  Forward finally argues Ms. Atkins submitted the October 11 proposed Order without Forward's input; the Purchase Agreement required the City to reduce the liens on the property; and, the new buyer CT is a fictitious name for an entity whose registration has been revoked from the State of Nevada Department of Corporations.

7

The City and Ms. Atkins argue Forward's challenge should be dismissed as Forward filed its supporting brief over thirty days late; Forward waived certain arguments by failing to raise the same arguments in bankruptcy court; and the bankruptcy court did not err by denying Forward's motion for nonsuit and finding the parties modified the Purchase Agreement.

### A. We decline to dismiss Forward's appeal for lack of prosecution.

Ms. Atkins and the City argue Forward's appeal should be dismissed for failing to file its supporting brief within thirty days under Fed. R. Bankr. P. 8018(a) and for lack of prosecution under *Poulis v. State Farm Fire & Cas. Co.*[55] We decline to do so.

Rule 8018(a) provides an appellant must file its supporting brief within thirty days of the docketing of notice the record has been transmitted to the court. We assess six factors to determine whether dismissal of a case for lack of prosecution is appropriate.[56] The factors are "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense."[57]

Ms. Atkins and the City do not offer sufficient facts to warrant dismissal under *Poulis*. Ms. Atkins and the City argue Forward submitted its supporting brief thirty-six days late and this fact alone warrants dismissal. Due to a clerical error by our clerk's office, Forward did not receive notification of the briefing schedule docketed on December 18, 2017 setting Froward's deadline to file its supporting brief within thirty days. On January 24, 2018, our clerk's office corrected the error and re-issued the briefing schedule providing Forward notification of the deadline.[58] Forward submitted its supporting brief within thirty days of the January 24 notice.

8

Because Forward did not receive notification of the December 18 notice and Ms. Atkins and the City failed to adduce evidence or offer argument in support of its request for dismissal under *Poulis*, we decline to dismiss Forward's challenge to the November 7 Order for lack of prosecution.

### B. Chief Judge Frank did not err in finding the parties modified the Purchase Agreement before Judge Fitzsimon.

Forward argues Chief Judge Frank erred by not granting its motion for nonsuit at the October 30 hearing and then finding the parties modified the Purchase Agreement. Forward argues Ms. Atkins and the City failed to adduce evidence during the October 30 hearing of oral modification of the Purchase Agreement. Forward argues the parties only agreed to approve the sale of the Property and agreed for the City to reduce its water liens. Finally, Forward argues the Purchase Agreement as modified would cause an unreasonable result of Forward taking on debts greater than the value of the vacant lot. Ms. Atkins and the City argue the parties' conduct and representations at the September 19 hearing together with Chief Judge Frank's October 11 Order evidenced the parties' oral modification to push closing up to October 17.

On appeal from a final order by a bankruptcy court, we review the bankruptcy court's legal conclusions *de novo*.[59] We review the bankruptcy court's findings of fact "for clear error and its exercise of discretion for abuse thereof."[60] A finding of fact is clearly erroneous when the district court is "left with a definite and firm conviction that a mistake has been committed."[61]

Pennsylvania law provides a written contract may be modified by a subsequent oral agreement.[62] If a contract requires modifications by written agreement, an oral modification must be proved by "clear, precise and convincing evidence."[63] That evidence can include statements by either party, or conduct acknowledging the modification of the contract.[64]

9

Chief Judge Frank did not err in denying Forward's motion for nonsuit. Chief Judge Frank relied on the October 11 Order and the representations and conduct of the parties at the September 19 hearing. He reviewed the October 11 Order and explained the Order alone is insufficient to conclude the parties mutually agreed to push up closing to October 17. Ms. Atkins's counsel argued the parties' representations at the September 19 hearing provide context to the October 11 Order and the parties agreed to the October 17 closing date.

Chief Judge Frank reviewed the audio recording of the September 19 bankruptcy court hearing. Both parties to the Purchase Agreement and the City attended the hearing. At the start of the September 19 hearing, Ms. Atkins's counsel explained the parties are in the process of finalizing the modified Purchase Agreement and the City wanted to put on the record components of the modified Purchase Agreement. The City explained the sale would not be free and clear of its water liens and Forward would pay the City its real estate taxes, license and inspection debt, and $1,000 towards the water liens at closing. Chief Judge Frank focused on two key representations made at the September 19 hearing. The City explained it would postpone the September 20 Sheriff's sale one month to October 18 allowing Forward make payments due at closing on or before October 17. And critical to Chief Judge Frank, the City stated, "if closing happens within that one month, then we'll agree to postpone the Sheriff sale another five months."

After listening to the audio of the September 19 hearing, reviewing the October 11 Order, and evaluating testimony of two City witnesses confirming Forward did not timely pay under the September 19 agreement, Chief Judge Frank concluded Ms. Atkins and the City adduced sufficient evidence to deny Forward's motion for nonsuit. In denying the motion for nonsuit, Chief Judge Frank explained the evidence allowed for an interpretation the parties modified the

closing date of the Purchase Agreement from November 25 to October 17. Chief Judge Frank explained it would make little sense to find the parties did not modify the November 25 closing deadline when the Property would be sold at Sheriff's sale on October 18 if Forward failed to making certain payments by October 17. To prevent the Sheriff's sale, Forward would have to close by October 17.

For the same reasons, Chief Judge Frank concluded the parties modified the Purchase Agreement. In his bench memorandum, Chief Judge Frank offered further analysis explaining the events taking place in state court simultaneous with the September 19 bankruptcy hearing did not impact his finding of a three way agreement between Ms. Atkins, Forward, and the City to modify the Purchase Agreement. Looking at the simultaneous actions in bankruptcy court and the court of common pleas from the perspective of Forward's CEO Glass, Chief Judge Frank concluded "Forward's CEO is in the bankruptcy Court negotiating with the City and with the debtor, Mr. Green [sic] could not have know[n] what was going to be the outcome in State Court . . . And therefore he could not have known whether the motion purportedly filed by the debtor with the support of Forward was going to be approved . . . So I don't see anything about the Common Pleas' order that undercuts the meeting of the minds that I am finding occurred in the Bankruptcy Court."[65]

We agree with Chief Judge Frank's well-reasoned analysis. When Paragraph 3(g) of Purchase Agreement is read in context of the September 19 bankruptcy court hearing and Paragraphs (e) and (g) of the unchallenged October 11 Order, Chief Judge Frank appropriately concluded Ms. Atkins adduced sufficient evidence Forward had to close by October 17 to defeat Forward's motion for nonsuit and to find the parties modified the Purchase Agreement. Forward's argument Ms. Atkins failed to adduce evidence of modification of the Purchase

11

Agreement in misplaced. It is hard to imagine clearer and more convincing evidence necessary for an enforceable oral modification than the parties reciting and affirming terms differing from an original agreement before a federal judge on the record. Ms. Atkins agreed with these modifications. Although offered to raise concerns, Forward's CEO Glass did not object to the modified terms agreed and recited at the September 19 hearing. Not only did the parties agree to the terms, the City offered the parties' reasoning behind the modification. Paragraph 3(g) of the Purchase Agreement allowed the parties to change closing "to an earlier date mutually agreeable by the Parties."[66] Ms. Atkins and Forward agreed to change closing to an earlier date at the September 19 bankruptcy hearing.

Chief Judge Frank incorporated the terms read in open court into his October 11 Order. Paragraph (e) of the October 11 Order outlines the costs Forward "shall pay" "at closing."[67] Paragraph (g) of the same Order requires Forward must pay these costs no later than October 17 if Forward wants to postpone the Sheriff's sale of the Property beyond October 18th.[68] No party moved to amend the Order arguing the Order did not properly reflect the parties' agreement. Reading the October 11 Order and the September 19 hearing transcript together, Chief Judge Frank correctly concluded the parties' agreement requiring Forward pay costs due "at closing" no later than October 17 and the representation of "if closing happens within that one month, then we'll agree to postpone the Sheriff sale another five months" set a new closing date "to an earlier date mutually agreeable by the Parties," October 17. Concluding otherwise would be inconsistent with representations made at the September 19 hearing and the October 11 Order.

The representations and conduct at the September 19 hearing contradict Forward's argument the parties only agreed to approve the sale of the Property and for the City to reduce its water liens. Neither party disputes the October 11 Order approved the sale of the Property. But

12

at no point during the September 19 hearing did the City agree to reduce its water liens. Rather, the City offered Forward an opportunity to negotiate with or seek administrative relief from the City to reduce the water liens by postponing the Sheriff's sale, if Forward closed by October 17. The City did not represent it would reduce its water liens.

Finally, Forward argues the modified agreement provided it would take on debts greater than the value of the vacant lot, a result it describes as unreasonable. We have no reason to question Mr. Glass's business judgment at the September 19 hearing. Mr. Glass attended the September 19 hearing, heard the terms of the modified Purchase Agreement, and did not object at the hearing or in response to the October 11 Order. Further, the Purchase Agreement identified the possibility of over $70,000 in water liens attached to the Property demonstrating Forward appreciated the risk of taking on debts greater than the value of the vacant lot. If Forward believed the deal to be financially detrimental, it did not have to close on the deal. Forward could, and did, fail to satisfy its closing obligations, allowing it to walk away from the deal.

We reject Forward's appeal to the extent it challenges Chief Judge Frank's denial of nonsuit and his finding the parties modified the Purchase Agreement at the September 19 hearing as confirmed in the October 11 Order.

### C. Chief Judge Frank did not err in finding Ms. Atkins sent Forward notice of default.

Forward argues Ms. Atkins failed to demand cure of Forward's alleged default. Forward also argues Ms. Atkins's entertainment of a competing offer for the Property the day after she sent notice of default constituted a breach of the Purchase Agreement. Forward includes this argument within its argument Chief Judge Frank erred by not granting its motion for nonsuit. But Forward did not raise this issue before Chief Judge Frank's denial of nonsuit. This alone is

13

sufficient to reject Forward's argument. In his bench memorandum at the close of the October 30 hearing, Chief Judge Frank did find Ms. Atkins provided Forward notice of default under the Purchase Agreement and Forward failed to cure. Even if we construed Forward's argument as challenging Chief Judge Frank's finding Ms. Atkins satisfied the notice provision, Forward's argument fails.

The Purchase Agreement provides, "[n]either Party shall be in default hereunder unless the other has given written notice thereof and such default remains uncured beyond five (5) days after the date of such notice."[69] The Purchase Agreement required notices be sent by personal or overnight delivery.[70] On October 17 at 8:52 p.m., Ms. Atkins's counsel emailed Mr. Glass and Forward's counsel, "I understand paragraphs (e) and (g) to mean that if you did not go to closing by October 17, then the deal was off. I will file a motion tomorrow to determine whether we complete your deal or go to Buyer #2."[71]

Chief Judge Frank found this October 17 email provided Forward notice of default explaining, "Well, the record shows that there was notice given on October 17 by debtor counsel . . . Five days have passed October 17 and there was nothing presented in the record that suggested that Forward attempted to perform between October 17 and October 22. So I do not perceive that provision either as an obstacle to my determination and finding that there was a material breach."[72]

Forward is wrong in arguing the notice provision requires a demand for cure. The notice provision only requires the non-defaulting party send notice of default. Although Ms. Atkins did not send its notice by personal delivery or overnight delivery, Forward does not argue Ms. Atkins's election to use email constituted a failure to provide proper notice. Forward does not argue it did not receive the email.

14

Ms. Atkins provided notice of default on the evening of October 17. Under the Purchase Agreement, upon receiving notice of default, Forward had five days to cure, with or without a demand for cure. Forward failed to adduce evidence it made payments due on October 17 by October 22, five days after Ms. Atkins sent her notice. At the October 30 hearing, City witnesses confirmed the City still did not receive payments on the liens. Ms. Atkins's entertainment of a competing offer did not prevent Forward from making payments on the liens by October 22 and closing under the Purchase Agreement.

We reject Forward's appeal to the extent it argues Ms. Atkins failed to provide notice of default under the Purchase Agreement.

### D. Forward waived its remaining arguments.

Ms. Atkins and the City claim Forward failed to raise the following arguments in bankruptcy court and cannot now raise these arguments: (1) Ms. Atkins filed the proposed Order attached to her amended motion to sell modifying the Purchase Agreement to require Forward pay Ms. Atkins's bankruptcy costs without Forward's input or consent; and (2) CT is a fictitious name for an entity whose registration has been revoked from the State of Nevada. Forward identifies these issues in its statement of facts in its supporting brief but does not include the arguments in its argument Chief Judge Frank erred. Whether Forward attempts to assert these arguments is of no moment as Forward failed to make these arguments in bankruptcy court and are waived.

When a party fails to raise an issue in bankruptcy court, the "issue is waived and may not be considered by the district court on appeal," unless "exceptional circumstances" warrant our review.[73] We find no exceptional circumstances.

15

### *Ms. Atkins drafted her proposed Order without Forward's input.*

Forward argues Ms. Atkins attached a proposed Order to her amended motion to sell the Property without input from Forward which required Forward pay Ms. Atkins's bankruptcy costs. Forward argues under the Purchase Agreement, Forward did not have to pay Ms. Atkins's costs. Ms. Atkins included in her proposed Order Forward pay her $181 filing fee for her motion to sell, $6.24 for copy costs, and $5.98 for postage. Chief Judge Frank's October 11 Order included the same language.

Forward waived the argument by failing to raise it in bankruptcy court. Even so, Forward does not cite authority requiring Ms. Atkins obtain Forward's views on a proposed Order, and any error in the October 11 Order could have been addressed by a timely motion in bankruptcy court.[74] Further, Forward's appeal seeks our review of the November 7 Order, not the October 11 Order.[75] Forward waived this argument and failed to present exceptional circumstances to warrant our review.

### *CT is an entity whose registration is revoked from the State of Nevada.*

Forward argues CT is a fictitious name for an entity whose registration with the State of Nevada has been revoked. Forward did not present this argument to the bankruptcy court and it is waived. Forward does not raise exceptional circumstances to warrant our review.

Further, the identity of the second buyer is irrelevant to whether Forward materially breached the Purchase Agreement. The fact a second buyer existed did not prevent Forward from setting a closing date and paying the liens by October 22. Forward's argument is waived.

### III. Conclusion

Chief Judge Frank did not err in denying Forward's motion for nonsuit at the October 30 hearing and finding the Ms. Atkins and Forward modified the Purchase Agreement. Chief Judge

16

Frank did not err in finding Ms. Atkins satisfied the notice of default provision in the Purchase Agreement. Forward failed to raise its remaining arguments in bankruptcy court and did not adduce facts demonstrating "exceptional circumstances" warranting our review of the waived arguments. We affirm Chief Judge Frank's November 7, 2017 Order in the accompanying Order.

---

[1] ECF Doc. No. 4-1 at p. 3. The bankruptcy record is filed at ECF Doc. No. 4. We cite to the ECF number.

[2] *Id.*

[3] Order, *In re Leslie C. Atkins*, No. 15-14778, ECF Doc. No. 48 (Bankr. E.D. Pa. Apr. 7, 2016).

[4] Second Modified Chapter 13 Plan, *In re Leslie C. Atkins*, No. 15-14778, ECF Doc. No. 39 (Bankr. E.D. Pa. Feb. 26, 2016).

[5] *Id.*

[6] *Id.*

[7] ECF Doc. No. 4-2 at pp. 9-17.

[8] *Id.* at p. 9 ¶¶ 1-3.

[9] *Id.* at pp. 9-10 ¶ 3(c).

[10] *Id.* at p. 10 at ¶ 3(c)(i)-(iv).

[11] *Id.* at p. 10.

[12] *Id.* at p. 10.

[13] *Id.* at p. 12.

[14] *Id.* at p. 13.

[15] *Id.* at pp. at 5-6.

¹⁶ *Id.* at pp. at 5-6, 19-20, 26-27.

¹⁷ *Id.*

¹⁸ *Id.* at p. 51.

¹⁹ ECF Doc. No. 8-3 at pp. 2-6.

²⁰ *Id.*

²¹ *Id.* at p. 3.

²² *Id.* at pp. 3-5.

²³ *Id.* at p. 5.

²⁴ ECF Doc. No. 4-2 at p. 113.

²⁵ ECF Doc. No. 8-3 at pp. 151-52.

²⁶ ECF Doc. No. 4-2 at pp. 56-57. On September 29, 2017, Chief Judge Frank received this case on reassignment.

²⁷ *Id.*

²⁸ *Id.*

²⁹ *Id.*

³⁰ *Id.*

³¹ *Id.* at pp. 61-62.

³² ECF Doc. No. 4-2 at p. 111.

³³ ECF Doc. No. 7-3 at p. 14.

³⁴ ECF Doc. No. 4-2 at pp. 61-62.

³⁵ *Id.* at p. 72.

³⁶ ECF Doc. No. 8-3 at p. 147.

³⁷ *Id.* at p. 138.

[38] *Id.* at p. 130

[39] *Id.* at p. 70.

[40] *Id.* at p. 4-5, 70.

[41] *Id.* at p. 71.

[42] *Id.*

[43] *Id.*

[44] *Id.* pp. 146-156.

[45] *Id.* at p. 150.

[46] *Id.*

[47] *Id.* at p. 151.

[48] *Id.* at pp. 151-52. Chief Judge Frank acknowledged Ms. Atkins did raise "potentially disturbing suggestions about Forward's attorney." *Id.* at pp. 140-41.

[49] *Id.* at p. 152.

[50] *Id.*

[51] *Id.* at pp. 152-53.

[52] *Id.*

[53] ECF Doc. No. 4-1 at pp. 12-14.

[54] ECF Doc. No. 2.

[55] 747 F.2d 863 (3d Cir. 1984).

[56] *Id.* at 868.

[57] *Id.*

[58] ECF Doc. 6.

[59] *In re Trans World Airlines*, 145 F.3d 124, 131 (3d Cir. 1998).

[60] *Interface Group-Nevada v. TWA*, 145 F.3d 124, 131 (3d Cir. 1998).

[61] *Vento v. Director of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 468 (3d Cir. 2013) (citation omitted).

[62] *First National Bank of Pa. v. Lincoln Nat. Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir. 1987).

[63] *Somerset Comm. Hosp. v. Mitchell*, 454 Pa. Super. 188, 197 (Pa. Super. 1996).

[64] *First National Bank of Pa.*, 824 F.2d at 280.

[65] ECF Doc. No. 8-3 at p. 151-52.

[66] ECF Doc. No. 4-2 at p. 10.

[67] *Id.* at p. 66.

[68] *Id.* at p. 67.

[69] *Id.* at p. 12.

[70] *Id.* at p. 13.

[71] ECF Doc. No. 7-3 at p. 14.

[72] ECF Doc. No. 8-3 at p. 153.

[73] *In re Kaiser Group Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) (citing *Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm LP IV*, 229 F.3d 245, 253 (3d Cir. 2000)).

[74] Fed R. Civ. P. 60; Fed. R. Bankr. P. 9024.

[75] ECF Doc. No. 2 at pp. 13-14.